You may call the first case. Case number 12-1222, Diane Novak v. John Novak. Good morning. Good morning, Your Honor. Karen Levine for the appellant, John Novak. I'd like three minutes for rebuttal. All right. Counsel? Scott Kramer, Griffin, McCarthy, and Rice on behalf of the Hines-Griffin Court. All right. Dean, you may proceed when ready. May it please the Court, we've raised three issues in this appeal, constitutional issue and two statutory issues. The constitutional issue is one of first impression in Illinois. There's no published case in Illinois that analyzes whether an order of protection can be an overbroad prior restraint because it unlawfully restricts free speech. We submit that here the trial court failed to strike the proper balance between prohibiting harassment and permitting speech that is constitutionally protected. Therefore, the order of protection at issue is unconstitutional because it is an unconstitutional case. Did the appellate court in Reynolds and Blackwood discuss the overbreadth issue? No. Those cases were based on whether or not the order of protection, I'm sorry, the Domestic Violence Act itself was unconstitutionally vague. And in discussing that, they were discussing some of the terms about whether or not there was violation in order of protection and was getting criminal sanctions for that. Well, what were the words used in the Blackwood case? I don't know what the exact words were, but I know that they weren't challenging the constitutionality of the Domestic Violence Act nor criminal sanctions for violating it. We're attacking the specific order of protection entered here because it's overbroad in that it restrains constitutionally protected speech. So, but aren't you challenging the harassment section? No. All I'm saying is in this case, the court went too far because instead of just restraining John Novak from talking about anything in that email string for any purpose and to anyone. Well, how would you propose that if we send it back for a new order, how would you propose it be that he can't use this email string to harass your wife? And arguably harassing in this case was determined to be threatening to do something, and if she didn't do something, then he was going to, in that instance, publish that email string or talk about it. So if you can find it that he can't use the email for a harassing purpose, which in this case the definition of harassment is for knowing conduct that's not proper to accomplish a reasonable purpose. So if that were what was limited, that might be okay. We have problems with the findings, which I'm going to get to in a minute. Well, I don't know that you really challenged the findings, other than to say that the statute wasn't complied with in terms of listing. Well, the court didn't make any findings, and that's the problem. Well, the court did make findings, it's just that I'm not certain that the court specifically went through the statutory sections, but there's no question there's a record of her findings. Well, there's a record. In fact, she denied certain relief, didn't she? She did deny certain relief, but what she didn't do is explain why it was necessary. It was necessary to enter an order of protection to govern future harassment, when in this circumstances the issues that had given rise to the order of protection hearing to begin with had been resolved either by court order or agreement. And Mrs. Novak said that one of the reasons that she wanted to have this order of protection was to save her reputation, which is not a proper reason to grant an order of protection under the Illinois Constitution. And so it's not clear that there was any analysis as to whether or not there was a reason to protect her in the future. Well, are there ongoing support obligations? There are ongoing support obligations. And is there a business relationship between the parties that's also like on a daily basis? No, it's not on a daily basis. How do they function with their company? Don't they jointly own a company, a construction company? They jointly own a company. John Novak is the manager of that company, and he's making most of the decisions. There are certain times when he has to get unanimity in terms of doing something, but those are major decisions. And the court found that since the time of the divorce in 2007, the parties rarely emailed each other, they rarely talked to each other, and so there weren't ongoing... No, it sort of all came up when the property that was being sold in Indiana, that there was a dispute over whether Mr. Novak should have to pay Mrs. Novak any money from the sale. No, it wasn't any money. The question there was, and I don't know that this is totally relevant to the appeal, but he wanted to know whether or not he could deduct the brokerage fees and carrying costs because he was paying them during the time period. What was the nature of the emails? How would you describe them in terms of, if you don't do this, then I'm going to do that? You explain it. What was the nature of it? The emails that are in the record, and we don't need to go into the... No, I'm not going to go into that, but the emails in the record, basically, he sent her a copy of his email and he said, if you don't drop your request for attorney's fees for this farmland issue and for this maintenance issue, I'm going to put it in a Christmas card and send it to your family and friends. Now, arguably... He sent her that on December 21st, and then at that time, she said she hadn't seen the email, and so he sent it, and then he said, I need to know your answer about whether you're going to do this because I want to put it in the Christmas card to your family and your friends. So, there's no doubt that's not good conduct. That's not what's at issue here. What's at issue here is whether you can restrain John from talking about things, for instance, that are in that email, like the fact that she's not a good housekeeper. The fact that he didn't like the way she took care of her kids. The fact that his marriage to him was over during a trip to Colorado when various things happened and he realized he had no connection with her. Those kinds of things could be talked about for totally non-harassing purposes. Like, to me, I had to petition the court to get a portion of that email that had been sealed. So, he can't talk to his therapist about it. He can't talk to his friends about it, and he should be able to do that. A similar issue was... As long as he's not using it to say, well, I'm not going to pay you next month. That's right. How much does he have to pay every month? Well, it depends. But he has a $525,000 support obligation per year. And what happens then is that money that she makes, either from their business or from someplace else, gets deducted from that amount, and then he pays the balance. But he pays it on a monthly basis. And then they have to sort of true up the amounts at the end of the year after she gives him her tax return. You stated earlier that there are major decisions which occasionally have to be done by unanimous decision of the owners. How do we know that this issue won't come up again the next time a major decision has to be made and Ms. Novak doesn't agree with what Mr. Novak wants to do? Well, that's why the findings are important here, because you're not supposed to speculate. Clearly, the Domestic Violence Act covers people who are related oftentimes in certain ways and will have certain relationships either way. Well, maybe they'll work out an agreement that she can give up all of her support obligations in exchange for him not telling the world what's in the emails. Well, I don't think that that's what he's asking her to do, and that's not what that issue is. No, but what was at issue in the previous decision was this idea that if you don't drop this request, I'm going to let everybody in the world know this. So I'm just saying maybe that will be what the result of this will be, that she'll say, listen, let's bag everything, and then you agree not to disclose what you didn't disclose for 31 years, but now you need to disclose. Well, first of all, I think he has a right to disclose. It's just a question of what the purpose is. Yeah, well, the court found that there wasn't a reasonable purpose for doing it on this occasion. Correct, but that doesn't mean that you speculate and determine that he wouldn't have a reasonable reason to do it on another circumstance. Yeah, no, it's just that there are continuing obligations that, you know. But I have to say, Your Honor, the findings are, A, that she never needed to protect herself from any sort of abuse from him since 2007, and these proceedings were at the end of 2011. And secondly, the court found that there was no, that they never really emailed, they didn't talk frequently, and third, the court said, you know what, I'm not going to enter an order that requires them only to talk by email. Yes. So there may be some times when they communicate. I think it's very, very rarely. Mr. Novak runs that mall. He's in the real estate business, and that's what that mall is all about. So the reason you need to make the findings is not just because she didn't make them. I don't know whether or not a court can make them. So maybe we should take a look at what some of these findings are and see whether or not, given the record, that there are at least some issues about whether they can be made. So the first thing is, and by the way, it's a statutory mandate that these findings be in writing or sent forth in the record. But the first one is whether or not that there's a nature, frequency, severity, or pattern and consequences of John's conduct both in the past and in the future that will give rise to issuing an order. And I think that I have said that Diane admitted that since the judgment in 2007, they rarely talked or communicated. Since 2007, she didn't need any type of protection from him. Well, it all came up because of the sale of the property, correct? No, it came up for two reasons. Well, didn't it come up after he said if you're going to persist in requesting the attorney fees and the amount? Right. So now the property is sold. So maybe it won't come up again. And that's really the point. Right. Well, I suppose. But there's still ongoing support obligations. There's still ongoing support obligations. And there had been since 2007. And there was never an issue about it before. And the statute does allow for the court to consider the likelihood of danger of future abuse in making findings. That's right. But I'm not sure what that likelihood of future abuse would be. I mean, I don't think it's just a speculative thing. Because in the Domestic Violence Act, you're talking about people generally who have something to do with each other frequently. Like in child custody situations where they have to still have a kid in common. And it doesn't mean that every time that somebody in one of those situations harasses somebody, that an order of protection necessarily has to enter. We're not talking about criminal issues here. We're talking about civil issues. Well, isn't one of the arguments that the conduct bordered on extortion and intimidation that occurred in this case? But that's not what's at issue in this case. No, I'm just saying, though, that is one of the arguments. When someone does something like that and says, if you persist in doing this, I'm going to do that, you're not saying there's any sort of threat here or extortion suggestion or intimidation? I think the court found that that conduct was harassment. Yes. And I'm not arguing that that wasn't harassment. What I'm arguing is two things. Yes. The order was just too broad. Too broad. And the other thing is, is I'm not sure whether or not findings can be made that would indicate that you need to protect future conduct here. Because there are... Well, that's something, if you are successful, that's something that the trial court would decide. If we were to send it back for specific findings under the statutory citation and whether or not there's a likelihood of future harassment. Well, in the Minteer court, this circuit, this district, first district, Minteer v. Hogan, they had an issue where there were no findings, and they reversed. They didn't demand. Well, is that the Justice DeVito opinion? I don't remember who authored it. Well, wasn't that the decision that said that there were no findings of any kind and that the facts didn't support any entry? There were no findings of any kind. That's correct. And in that case, they vacated it. And in the Henry court, which is the second district, they also vacated it because there were no findings that were made. And again, they found that the statute required that findings be made. And again, here, it's not clear that findings will be made. It's now over a year since the time that the conduct allegedly occurred here. I shouldn't say allegedly because it did. But it's a bit over a year that there were testimonies. Yeah, it runs through April 14th, 2014. And so over a year has passed. The issues that gave rise to it are long gone. Those happened in December of 2011. And there's just no indication that there necessarily is going to be any future problems that would require that kind of an order. So we realize that the court can, under Rule 366, probably craft or tell the trial court how to make an order that's not overbroad and doesn't restrain constitutionally protected speech. But what I don't think the court can do, and I think you mentioned it, is I don't think the court can, on a cold record, just make the findings. That would be something that the trial court would have to do. But, again, under these circumstances, we believe that vacating it is our first priority because those findings weren't made and it's unconstitutional. Anything further, or do you wish to save time for your rebuttal? I'll save time for my rebuttal. Thank you. All right. Yes, Mr. Kramer, good morning. Now, did the court refer to the statute when it entered its findings? There is reference to the Domestic Violence Act if you read the findings in itself. Well, you direct me because I have it in front of me. It's on page 88, 89, 90, 91, and 92. At the conclusion, at least to the extent that the court makes very clear, and Mr. Novak would be made very clear, that the Domestic Violence Act is the underlying act. At the very end of the findings themselves, the last sentence states that the plenary order of protection is going to be in effect for a maximum of two years under the Illinois Domestic Violence Act. In terms of the findings themselves, Your Honor, the case law does not and should not require this court to reverse a plenary order of protection when A, the evidence of abuse is clear in the record, and B, that the record otherwise supports the findings. When you say the abuse, in this particular case, wasn't there an order to transfer funds to Mrs. Novak for the sale of that property? Isn't that over and done with? That one individual dispute is over and done with, but to suggest that the record doesn't support the findings would miss the point insofar as Your Honor referred to the ongoing obligations between the parties. The court makes very clear. Well, shouldn't he be allowed to say what he wants regarding anything about his ex-wife as long as it's not used to harass her? So there's two broad issues in this case, Your Honor. One is dealing with the prohibition on harassment itself. That's just the harassment injunction where the court checks the box that Mr. Novak is prohibited from harassing Ms. Novak. The second is what I'll refer to as the email injunction. This is injunctive relief issued under Section 214B-17 under the Domestic Violence Act, which allows a court to enter injunctive relief to prevent further abuse. True, but wouldn't you agree, as a general rule, that if someone wishes to slander or defame someone, generally the courts don't get involved and enjoin that kind of conduct because the person who is defamed may retaliate by filing a suit? What makes this case unique, Your Honors, is that it's not just a pure defamation case. No, but would you agree that generally outside, I would agree that outside of the domestic violence context that that rule should apply. In the domestic violence context, however, that there are two alternative rules that this court could apply in upholding the plenary order of protection. One is the rule that once an individual harasses another individual and a court has a trial on the merits for viewing that harassing speech, court can prevent repetition of that harassing speech. In this case, that's the email. But isn't the reason that that was harassing speech was because it was used as leverage in the litigation? And if you take the leverage in the litigation out of the equation, isn't this just protected speech? What the court says, and even if you look at the Evans case, which Mr. Novak cites, which is in the defamation context, what the court says in Evans is that once a court has a trial on the merits and it analyzes specific speech, even finding it defamatory, that it can prohibit repetition of that harassing speech. So we all agree that harassment, even Mr. Novak would agree, that harassment in itself is unprotected speech. That comes out of the Blackwood case that Your Honor referenced. All this is is an extension of that concept in that the primary weapon of this case. But their case dealt with statements that were made directly to the ex-wife. We're talking now about statements made to unrelated third parties. We are, Your Honor. Aren't there legitimate reasons why these statements would be made to a third party that would not constitute harassment? There are absolutely hypothetical reasons that one could use this statement for non-harassing purpose. But what the case law suggests is that you can look to the record, and in the record there's only one purpose that shows up in the record, and that's Mr. Novak's harassing purpose. Well, that's in the past, though. But going forward, this is an injunction that goes forward. And my question is, aren't there, you know, a myriad of legitimate reasons why these matters would be discussed with third parties? And doesn't that fall outside the Blackwood case and the other cases? There may be legitimate reasons. Well, if there are legitimate reasons, then isn't this an unlawful prior restraint? Two points, Your Honor. One is the record doesn't support as much. Mr. Novak had his hearing, and he had the opportunity to testify as to legitimate reasons that he may have had for this email. The record only shows one reason. So while on appeal there could be. But that reason's gone. I mean, that litigation's over. That litigation's only insofar as that was the first dispute that they had. But as Your Honors have referenced, there are ongoing obligations between the parties. And if he ever uses the threat, the threat to disclose these matters in order to gain advantage in the continuing litigation between them, can't he be prosecuted or found in contempt under the harassment provisions? He could, Your Honor. All right, then. Then what do you need this extra prior restraint for? If you could go to the trial court and you could say, we can prove to you, trial court, that the reason why he's made this threat is because he wants to gain advantage. And by the way, if it's not a threat to his ex-wife, if he merely goes to a third party and says blah, blah, you know, things that we're not going to talk about today, he's lost the lever with regard to that. He hasn't used it as a lever. He just went ahead and disclosed it. So he didn't get anything out of it other than some personal satisfaction. But he didn't use it then as a lever in the litigation. So why should that be unprotected speech? There would be two reasons, Your Honor. What's the reason if it's not used to gain advantage in the litigation? What's the reason to keep him from going to his best friend and explaining to him all the things that happened in the last 30 years? So to the extent, Your Honors, are concerned with the hypothetical overbreadth of the case. Well, here's what I think we're talking about. The point we're getting at, the harassing act here is threatening her that you're going to reveal this information, not giving it to the third party. So the harassment here is advising Mrs. Novak we're going to do this as opposed to actually communicating the contents to somebody else. Although not supported by the record, Your Honor, in the event that these overbreadth concerns are of concern to the court, the test the court should be applying is a balancing test, which Mr. Novak doesn't address. Well, that's why part of the problem with this case is that the court didn't go through the statutory factors. For example, in comparing relative hardships, which is what the court is supposed to do, resulting to the parties relating to the family home, but it says availability, accessibility, cost, the effect on the party's employment, the effect on the party's relationship. Now, do you think any of those things have anything to do with this? Those findings, Your Honor, are only applicable if someone is restrained from being kept out of a marital residence. Yeah, but then it says subject to the exceptions set forth in paragraph 4, the court shall make its findings in an official record or in writing and shall at a minimum set forth the following, that the court has considered the applicable relevant factors. All right, so taking out 2, we go back to 1. The nature, frequency, severity pattern, and consequences of the respondent's past abuse, neglect, or exploitation of the petitioner or any family household member. Correct. And, Your Honor, if this court would turn to the record on page 89, that's where the court actually does walk through the findings. So contrary to the suggestion that there aren't, the court doesn't address the findings. The court says, and I quote, I'm particularly troubled by the communication from John to Diane as it appears to relate to a threat that if she does not proceed in a certain manner, that the email would be disseminated to her mother, siblings, and possibly even cousins. And that's what bothers me most about the email communication. It was a threat with the stated purpose that he would be able to obtain the relief he was seeking in the underlying dispute. In other words, the court's contemplating and addressing the severity and the nature of the abuse. The court goes on to say that there hasn't been a history of communications that would warrant a requirement that they only communicate via email. In other words, recognizing the frequency. Well, wouldn't an order which prohibits him from doing this, communicating with her, and threatening to release the email, wouldn't that satisfy the object here? To get back to Your Honor's question, which is related to the question earlier, what this court should apply in the event that it's concerned about the overbreath issues is a balancing test. And the reason a court should apply a balancing test is because the court needs to consider the unique context in which this case arises. This isn't just a defamation case. This is a case where somebody has already been found to abuse another party. And courts need the flexibility to take steps to protect abused individuals. And they need flexibility that a strict scrutiny test, which counsel suggests that this court apply, doesn't allow for. That's why the Domestic Violence Act calls for a balancing test. And I think the most poignant example, Your Honors, of why these overbreath concerns shouldn't concern the court is the example that Ms. Novak raises in her brief, which is the concept of a no-contact or stay-away order. A no-contact and stay-away order is probably the most important tool that a court has to protect a victim of domestic violence. Right, but we don't really have that here. We don't have that here. We have a court saying you can't say these things to anyone. Correct, but as with the stay-away order, there are plenty of protected speech that's prohibited when a court takes the step of entering a stay-away order, whether it's stopping by and saying happy birthday, whether it's saying hi to your friend that's the neighbor. Courts recognize that once someone's been abused, a trial court has a more liberal ability to take the steps necessary to prevent further abuse. And that's why the statute talks about, 214B17 talks about injunctive relief entered to prevent further abuse. And in this case, all the court's done, just as with a stay-away order, is give Ms. Novak a zone of safety, so to speak. Well, it's kind of a wide zone, isn't it? A rather large zone? What about an order that would say something to the effect that if you want to disclose the contents of this, that you petition the court? It's a great question, Honor, and actually Mr. Novak already has that right under the statute. And in particular, section 224 says that when there are a change of circumstances that a party subject to an order of protection can come in and ask for a modification. And that's why I would suggest that when this court's balancing whether this order of protection is proper, one of the considerations is he can come in and petition the court. Because as of now, all this court has in front of it is a record. Well, perhaps, though, the order should be recrafted, and then part of the order that could be entered would suggest that if there's some reason that you have to provide this information for someone, what's the language? It's for a – that the conduct is – well, harassment, the broad definition that would certainly be something that would be close to this case, is knowing conduct that is not necessary to accomplish a reasonable purpose. Isn't essentially that what the court found here, that the conduct that had occurred, not what was going to occur? She did find that the conduct that had occurred clearly was not being used to accomplish a reasonable purpose. Correct. And the court then further notes that the parties are going to be intertwined. In her findings, she notes that the parties are going to be intertwined by the very nature of their judgment and by their partnership in the company itself. If Your Honor thinks that the resolution to this case is simply to add a provision that Mr. Novak can petition the court for a reasonable purpose, because on the record before the trial – But isn't that kind of an unwieldy provision? Let's say Mr. – I don't know what his personal situation is, but let's say Mr. Novak is sitting down at the dinner table with his mother, and his mother says to him, you know, how come you got divorced? I mean, I really was hoping that your marriage would last a long time. Why did you get divorced? Is he supposed to turn to his mother and say, you know, Mom, I'd like to tell you, but I've got to go ask for permission from a judge first? Once – And how would telling – and part B of that question is, how would telling his mother why he got divorced, presumably the contents of that email, how would that constitute abuse or harassment? The same way, Your Honor, as just when someone's subject to a no-contact order, that coming over to the abused party's house and saying happy birthday wouldn't necessarily be abuse. I don't see the analogy at all there. I don't see the similarity of someone's – you know, of a spouse being told, you cannot go to this address, as compared to the question that Justice Palmer asked about sitting down talking with a relative or friends. There's totally no comparison. The only comparison – In the situation with a no-contact order, obviously the mere presence of the individual coming over would strike fear in the heart of the beneficiary of that no-contact order. But in the situation where Mr. Novak's sitting down with his friend or his mother and having a conversation about what happened in his marriage, that shouldn't strike fear into anybody's heart. Other than if the real purpose of this is just to protect your reputation, which is not protected. And in this case, Your Honor, Ms. Novak testifies. Reviewing the transcript, you see the effect the disclosure of this information would have of Ms. Novak. She talks about how – you can read how she started hyperventilating, how she felt like she was caught up in the tornado. Yeah, but that's not why the court granted the relief. The court granted the relief because it was being used as an inappropriate tool. It wasn't because of her – yes, she felt certainly afraid or frightened, but it was because she was going to be exposed. Correct. The court entered the order because he was using it as an intimidation tool regarding the Indiana property. Now, if the court were to conclude that this is simply what's going to happen again, if he's allowed to disseminate in exchange for – but the court didn't specifically say, although the court said she was extremely troubled by the fact that it was used for this particular purpose and whether that might happen in the future, she certainly hinted at that as well. Correct, Your Honor. In terms of – I would just direct the court back to a balancing test insofar as although that hypothetical example of how Mr. Novak might use the speech. But that's what the trial judge was supposed to do. She was supposed to put on the record how she balanced his interest in disseminating this information that now he suddenly needs to tell the world about versus the use of it to try to maneuver in the proceedings in front of her. She didn't say that. She didn't say, I've considered these things. I've weighed his right to go out and tell the world how horrible his wife is versus using it as a tool to intimidate or force some sort of leverage in the proceedings in front of her. So there's two injunctions that the court needs to be mindful of in reviewing the case. You have the harassment injunction, and then you have the email injunction itself. With respect to the harassment injunction in particular, the case law supports the proposition that the court does not have to go through each and every finding word for word in order to uphold it. If you review the cases that Mr. Novak has cited, they're all extreme cases. These are cases where not only there are no findings whatsoever, but there are cases where these cases were overturned on an abuse of discretion standard for failing to even have any evidence of abuse. In contrast, the McCoy case, which is not addressed by Mr. Novak, discusses these cases where the record that your honor is reviewing supports the entry of the plenary order of protection, even though the court didn't walk through the specific word for word findings. And what McCoy's case says, and I quote, a reviewing court will not overturn an order for lack of specificity in the findings when the record supports the statutorily supported findings. That's an important rule, your honor, because the Domestic Violence Act is supposed to be construed broadly in order to fulfill its purposes. One of those purposes is to recognize the Domestic Violence Act is a serious crime against both the individual and against society. And two is to recognize that courts have not sufficiently protected individuals against abuse. The case talks about, or the statute talks about recognizing that abusers have been able to escape effective prosecution. And so if this court were to overturn orders of protection when the evidence of abuse is clear and the record supports the findings, it would be undermining the very purpose of the Domestic Violence Act. And the McCoy case is the only case that addresses that question before your honors. Would you agree that Mr. Novak was free to communicate this information freely? Had he not communicated to Mrs. Novak, if you ask for this additional money, I'm going to let it go, he would have been free to disseminate this information. The question that the court would have to look at, your honor, is whether it met the definition of harassment. Was it an unreasonable, did he have a purpose that was unreasonable? Well, I'm saying, assuming he did not call Mrs. Novak at all, but rather put it out there with other people. Absolutely. But what changes, your honors, is once somebody abused someone, there's a different framework for this court to look at future communications. Once there's evidence of abuse on the record, and in this case that's the threat, that's the extortionist threat to which there's no objection to whether abuse took place here. After there's abuse, my suggestion is that this court can apply a balancing test to resolve when evaluating an injunction to prevent further abuse. That balancing test is supported by the minor case, which is not addressed in Mr. Novak's brief. What the minor case talks about, as opposed to applying a strict scrutiny test, the minor case dealt with a prior restraint. A prior restraint that was entered to prevent further abuse on an individual that was already abused. And in particular, the facts of that case, albeit not in order of protection, because as counsel recognized, this is an issue of first impression before the court. But the most analogous case would be the minor case in which the court, in evaluating a prior restraint, elects to apply a balancing test. And the reason the court does apply a balancing test, as opposed to a strict scrutiny test, is because the court recognizes that they were trying to protect an individual that was already subject to abuse. And the statute that allowed the restriction in that case, just like 214 and B-17 in our case, was to be construed broadly to serve a humane purpose. In other words, when you balance the harms, Your Honors has talked about the ways in which Mr. Novak could go to dinner and talk about these facts in a non-harassing manner. But when you balance the harms, all the court has before it is a record that has one purpose, a harassing purpose. In contrast, Your Honors has a record before it, which notes Ms. Novak's extreme reaction to the threat and what would happen if the email were disseminated. In these cases, when you balance the harms, Mr. Novak, all he loses is the ability to have that conversation for a two-year period of time, which can be remedied, by the way, in the event that he had a legitimate purpose, he could petition the court. If the court balances those circumstances, I would suggest that the balancing test comes out the same way it does in the minor case, which is you err on the side of... If we were to apply a balancing test or send Novak to apply a balancing test, what are we balancing? We're balancing on the one side Mr. Novak's, you know, right to say these things to his friends and relatives. What are we protecting on the other side? Are we protecting just general reputation or are we protecting the right to be free from fear of the leverage of that threat being impliedly out there? What's on the other side of the balance? You're protecting Ms. Novak from further domestic violence, which the Domestic Violence Act recognizes as a serious crime. Well, what is the domestic violence here? I assume you don't say that if he went to his therapist or his relative or friend and said during the marriage she did this or that. That's not domestic violence, is it? But if it's connected up with the litigation, would you then say that it is? And then what you're saying when you talk about the cases that talk about once there's already been a finding of abuse, you can look forward and try to prevent further abuse. Since there's this implied threat, if we ever have problems in this litigation, I'm going to use this. That's a way to prevent against that implied threat. Is that where you're going? I'm following, Your Honor, the language of the statute that talks about the injunction. That's 214B-17 talks about. You have to answer my question. What's the other side of the balance? The other side of the balance is giving Ms. Novak this two-year period in which she is 100% free from domestic violence, that there's an order that ensures that Mr. Novak's not going to use this information directly or indirectly to harass her. Will there be some potential overbreath? Potentially, but it's not supported by the record, and that Mr. Novak had the opportunity to testify at trial as to the reasons why he had a legitimate use to use this e-mail. If he did, we'd have a different case here. But all this court has before it is the same as the trial court had before it, which is a record that supports that there was only a harassing purpose for this e-mail. The nature of all these orders is generally to prohibit future conduct. It's not to stop what has already occurred, but it is to prevent another incidence of abuse. That's the whole idea behind the Domestic Violence Act and orders of protection. It's not looking at what was done in the past. It's looking to protect the abused victim in the future. That's correct, Your Honor. But it is subject to limitations. If Your Honors feel that limitations are appropriate in this case, the court need not go through the process of remanding if the court already has in mind the limiting construction that would resolve this case. If you turn to the COUNT case, which Ms. Novak cites in her brief, it stands for the proposition that in order to resolve any overbred problems in the free speech context, Your Honors are free to apply a constructive measure to resolve the issue. So in this case, maybe that's... Well, if the trial court had specifically referred to the statute and made specific findings in regard to what it's supposed to be doing before entering the order, I don't know that we would be here right now. That's one of the problems. The case law doesn't... And it's not really our job to be entering findings under the statute that really in the first instance belongs one place. Well, if we're going to turn to the findings themselves, Your Honor, there are still two points for Your Honors to keep in mind. One is that the case law doesn't support that notion. The case law supports the notion that so long as the record supports the findings, that this court doesn't remand solely for the purpose to go through the exercise. But regardless, the findings in this case were sufficient. I don't want to suggest that there is not enough here for this court to look at. There's three findings that they're required to make. And if you actually walk through them in particular, they're in this record, whether contemplated or expressed. And the McCoy case would say you don't need to go that far, but this court actually did. As Your Honor mentioned and we discussed earlier, one, the statute under C-1 requires her to consider the nature, the frequency, the severity, and the pattern of the abuse. That's in that paragraph that I recited for Your Honors on the record on page 89. The second two findings, just to narrow what Your Honors are looking at, there's only two findings, and they're both really conclusions. One is, this is C-3-2 of the statute, whether the conduct of respondent, unless prohibited, will likely cause continued abuse. And the second, whether it's necessary to grant the request of relief in order to protect the petitioner. Did the court use those exact words? Absolutely not. But they didn't need to. One, under McCoy, and two, she contemplates them. The court notes that she considered the testimony and reviewed the exhibit, of which there are a few. The court says, and I quote, The court finds that the conduct as alleged in the petition for plenary of order of protection would warrant the issue of the plenary of order of protection and prohibit the respondent, John Novak, from harassing the petitioner, Diane Novak. The court can note from the record that the abuse only stopped once the emergency order of protection was entered. Ms. Novak further testifies that without a court order, that Mr. Novak would send the e-mail, a testimony which goes unrebutted. The court, in its findings, notes that the parties are intertwined by the very nature of their judgment, recognizing that they're business partners and noting that they have ongoing obligations. The specific language that the court uses aside, the record supports that absent entry of an order of protection, there's likelihood that Mr. Novak is going to continue to abuse Ms. Novak. The only piece of evidence that this court could use to the contrary is a suggestion that the dispute's over so he won't harass him, which to me, which is akin to, I promise I won't do it again. There's no circumstances for me to do it again. But what that ignores is the facts in the record, which are the obligations aren't over. The maintenance obligation which formed the basis of their underlying dispute is ongoing. Counsel testified how they have to resolve, or counsel in her argument suggested, Mr. Novak's required to pay a certain amount a month. According to the judgment, they have to reconcile that amount on an annual basis. In other words, they're going to be intertwined for a long time. Mr. Novak has once turned to extortion in order to, when he doesn't like the way Ms. Novak might be handling a solution, there's nothing in the record to say that he won't do it again. And at a minimum, knowing that the standard in these cases is against the manifest weight of the evidence, all the court would have to determine today is whether the determination that those findings were addressed in the record. I'm not sure we're reviewing this for manifest weight. We're interpreting whether or not she complied with the statute. And in that case, Your Honor, the case law says you don't have to look for word-for-word compliance. If Your Honor's review, if you review the record and determine that the record supports that the order of protection was without it, there would likely be continued abuse, and whether it's necessary to protect the petitioner, then McCoy says you can uphold it. And that's consistent with the purpose of the statute, which is to avoid, to recognize that people who have committed domestic violence have been able to escape effective prosecution. And if this court were to overturn plenary order of protections for the failure to check the box on the word-for-word of each of the findings, that purpose would be undermined. How do you respond to the series of cases cited from California which appear to be contrary to your position, keeping in mind that everybody here agrees this is first impression Illinois? There's a few important distinctions, Your Honor. The first and foremost is those cases, unlike our case, were not cases where the individual was already found to be abused under even a comparable domestic violence act. These were defamation cases. What I've suggested in my argument, Your Honors, is that abuse cases are different, and so there's different considerations, and that when a case comes before a court where an individual has already been abused, a balancing test is appropriate in evaluating the relief. Second of all, I'll remind the court of the Evans case, which counsel cites, which actually supports the type of analysis that I've proposed to Your Honors. Although it is a defamation case, in that case the court explains that after there's been a trial on the merits, that a court can prevent repetition of a defamatory statement. This case is really just an extension of that proposition in that the trial court had before it the specific words that Mr. Novak was going to use. This wasn't just a case where Ms. Novak is asking this court to prohibit defamatory statements. The court had specific language before it, and the court prohibited it, and that's exactly what the Evans case would support. Does the Evans case provide for the prohibition of the future utterance of a defamatory statement or the future utterance of an allegedly defamatory statement? Of a defamatory statement based on the record before the court. So, for example, in the defamation context, when a court would review a statement, the court can only review it in that particular context. Could there be other contexts where that statement isn't defamatory, whether it be parody or some other use of those words that might not be defamation? Yes. But the court can prohibit repetition of that statement on what's before it on the record. Does your position with regard to the Evans case turn on the question of whether or not it's actually defamatory? No. Because in this case, we actually have admissions. Correct. It does not turn on whether it's defamatory. I'm suggesting that it's just an extension. This isn't the evil with regard to prior restraint? We don't know in advance whether something's defamatory until you have a trial to determine if it's defamatory? That's why this is just an extension of that rationale in the harassment context. And so far as the court has a harassing e-mail before it, of which the record only supported a harassing purpose. And so with that record. And in that context, it really doesn't matter if it's true or not. Correct, because we're dealing with the domestic context, which is why I think those cases as a whole are distinguishable, because abuse is something that warrants special treatment. Anything further, Mr. Kramer? No, thanks, Your Honor. Any further questions from the court? All right. Levine? Yes, Your Honor. I have a copy of that Mentir case with me, and it's important because a lot of what was talked about, I think, is relying on Hageman, which is a case that was decided before the act was amended in 1993. The amendment in that act required the court to set out in writing, in a separate instrument, or in the transcript, specific findings. And Mentir was decided by Justice Serdot, not Justice DeVito. And what he said is that the Hageman court held that an order of protection would not be reversed solely because the trial court failed to make specific findings on the factors referenced in the statute. But that case was before the statute was amended. So it's no longer good law, and now the court has to make specific findings. And it is forward-looking, not backward-looking. We know that harassment occurred. The question is whether it will occur again. So isn't that one of the things that the court has available to use, that if the court concludes that the information in the e-mails was used for a harassing purpose and no other reasonable purpose whatsoever, and that there are continuing obligations ongoing, which she concluded that, she did conclude that. She said that she refused certain relief, but she concluded that there were ongoing, there was an ongoing support obligation, and there was some sort of ongoing business relationship. So doesn't the court have the authority to prevent future abuse? In other words, using these e-mails again for the same purpose that it was used before? That's exactly what the statute says. That's why the court is supposed to look at that and explain on the record that it is concluded that in order to prevent future harassment. That's the whole idea behind an order of protection, is to stop what may occur in the future because of evidence that occurred in the past. That's why judges enter orders of protection. It's not to correct what's already gone. I agree. Yes. But she has to make these findings. And it's interesting that we keep talking about the fact that they're intertwined. I'm going to read from the record on page 90. I didn't hear a response to whether or not that would be a provision of disciplinary order of protection that could be entered without objection. But absent hearing an agreement between the parties that that may work for the benefit of both of them so that it is that it restricts their communication with each other. Well, that's one way to resolve this, isn't it? For the parties to agree on how they could manage disclosing this information versus using it as leverage? No, because she finds in the very next part, I find that there has not been a history of communications that would warrant that additional restriction to put into place. Which one was she referring to? That was the email restriction. But what I'm suggesting is the court finds that there hasn't been any of this history of abuse. She also finds on page 90, again, But there's a history of abuse now, isn't there? There's a history of abuse with regard to this incident. And so what counsel has said to us, your opposing counsel has said to us, is now that there is a history of abuse, that it's proper for the court to say there is this implied threat. He's done it before. There's an implied threat that if you don't cooperate in our financial relationships, that I will disclose this. That is something that is not protected and can be enjoined. He claims based on the Evans case, we should use the finding of abuse here to look forward. And by the way, there's only 10 months left on this injunction. So can't he hold his tongue for 10 months? He shouldn't be forced to hold his tongue for 10 months. Well, what's the competing interest? Counsel said we should look at a balance. What are the strong competing interests for him to not have to say these things for a mere 10 months? When he never had to say them for five years before that time frame, they suddenly became important when the Indiana property was at stake. Well, that may not be true because certainly he may have discussed the contents of that email prior to the time that this all happened. But what stops that? The Illinois Constitution says that everybody, every person has the right to speak freely, to publish freely, to write freely, and then be responsible for abuse of that liberty. And then the section goes on to talk about libel and defamation cases. Well, then you're suggesting that there was no harassment, that this wasn't harassment, and that it was for a proper purpose, and he should be allowed to speak freely about this subject because he has a constitutional right to it. He doesn't have a constitutional right to harass her. That's true. Does he have a constitutional right to harass her in the future going forward with obligations? Only. The court, you can't get away from the fact that the court has to make findings. And you can't get away from the fact that the findings that the court makes, and you're right in terms of not granting certain relief, is that, one, there isn't a history between these people of any kind of problem with communication. So going forward, she's not going to restrict it. Two, she's not going to do anything about personal liberty because, again, there's nothing in the record for that. Three, she goes on to say on page 90, she can't anticipate what John is going to do in the future, unquote. Well, that's part of the problem, isn't it? No. This was used to harass. It was used to leverage or to have leverage in the proceedings. Now, if the court is concerned that this is going to happen all over again, how does it stop that? Well, first of all, the court didn't make those findings. That's number one. Two, the situation that brought all of this to a head is now gone. Three. But there's further obligations. Everybody admits that. So doesn't all this do is take away that hammer for ten months? Doesn't that just keep him from harassing her in which way we already know he has done? Doesn't this just take away that hammer? Doesn't it give her peace of mind for ten months that, you know, I don't have to worry about this when I argue with him over how much money he owes me, that he won't use this hammer against me? At least for ten months I know that I'm safe. I disagree. Why would we have a statute that requires minimum findings? Why would we have a Constitution that guarantees no reason? I don't want to get caught up in the findings as much as I want to talk about the constitutionality of it. I mean, assuming that she made the appropriate findings, or even if we send it back for her to make the appropriate findings, based on this obnoxious behavior that everybody admits occurred, can't we say, you know, there's ongoing obligations and we're going to take this hammer away from him for at least ten months? This lever in the litigation. I think it violates the First Amendment. It violates the Illinois Constitution. It violates a stream of U.S. Supreme Court cases. Does an order enjoining him from making that threat to Ms. Novak satisfy the constitutional concerns? Yes, because harassment is not protected speech, but that's not what we have here. Well, what was the harassment here? The harassment here was not the speech itself. It was the threat. It was the threat to release certain information, otherwise I'm going to do this. Are you contesting that there was harassment? No. And are you contesting that there is a right or that the court has the authority to stop harassment in the future, to stop using speech to have a hammer, as Justice Palmer used the phrase? If it's narrowly tailored, then yes, you can do it. And how would you tailor this if you were writing it? If I were writing it, I would say that he cannot use the email as a threat to her in the future to release it for an improper purpose. That would be what I would say. You have to focus on the reason you are doing it, not the speech itself. But again, under these circumstances, everything is over between the parties that caused this issue. Do they have support obligations? That's like saying if you hit your wife once, that as long as it's already over with, I can't stop you from ordering not to do this again. That's like if you analogize it to other conduct. It's like saying he hit her once and I'm going to, that's fine. It's over with, he's not going to do it again. But that actually defeats the whole purpose behind the Domestic Violence Act and Orders of Protection. They're entered to say that I think you might do that again, so I'm going to order that you can't do it. And the way that you can't do it is I'm going to ban you from being within 1,000 feet of this person. She didn't do that. The point is that in this case the court found that this particular individual used information to threaten and suggest disclosure unless you do what I want to do. That's kind of the whole idea. The court is entering an order saying I'm not going to let you use this because you've used it inappropriately in the past and there's a chance, a good chance you're going to do it again. So until next April I'm not going to let you disclose this information to anyone because you've already abused the privilege and I'm afraid you might do it again. Disclose all of that information? I think that's what we call an overbroad prior restraint. I don't think the court can do it further. I think the court didn't make the requisite findings. And I agree that there's no suggestion of a reference to the statute in the record. The court doesn't refer to the sections, it doesn't refer to each one. And whether the statute directs the court to do that. So I agree with you that there is no specific findings relative to the statute. And the court needs to make them because that's what the legislature said when it passed the Act. And on top of it, it amended the Act in 1993 to make sure that these findings were there, to ensure that it wasn't just a knee-jerk thing that, oh my God, somebody did something bad, I'm going to punish them in some way. They have to make some kind of findings that there's a threat in the future. And I'm not sure that those can be made now. But if that's the way it's going to be, then you shouldn't be the ones who are figuring out through the record whether the findings have been made. It's got to be remanded for that. And with all due respect, I think there's statements in the record that demonstrate that there isn't so much of a fear of further abuse. There's, I mean, even Diane Novak is saying he never did it before. She's saying he rarely talks to me. The court's saying there's no history of any problem of communications between these two people. And the court said, I really don't know what he's going to do in the future. And so it's not like she's afraid that he's going to do it again in the future. There's nothing on that record that says it. So in closing, what our position really is here is that the order of protection is overbroad, and hence unconstitutional, and it's an unconstitutional prior restraint, regardless of whether he did something bad in the past does not mean that he loses his constitutional rights in the future. One. Two, the trial court failed to make the minimum findings in violation of Rule 214C3, and also we never talked about it, but it failed to define harassment on the forum order as well, which is also required under Section 221A1. And if the court desires to remand the case, it shouldn't attempt to make the requisite findings based on the cold record, it should leave that to the trial court. And these findings are important because the purpose of orders of protection are to restrain future conduct. Given that the matters that gave rise to this order of protection are long gone, it is unlikely that there is a new need now to reissue the order of protection to protect Diane from future harassment from John. Thank you. The case was well-argued and well-briefed by both the attorneys, and we will take the matter under advisement.